IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**AFFORDABLE CARE, LLC**                                             **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO. 1:21-cv-85-TBM-RPM**

**RAELINE K. McINTYRE, DMD** *and*
**RAELINE K. McINTYRE, DMD, P.C.**                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Affordable Care, LLC lost in arbitration. Affordable Care now seeks to set aside the arbitration award because it believes the arbitrator was partial to Defendants. Affordable Care has not put forward evidence to demonstrate that the draconian remedy of vacatur is appropriate.

Affordable Care is a North Carolina company that prepared the governing contract with the Defendants.  That contract required any disputes to be resolved in arbitration in Raleigh, North Carolina. Also, North Carolina law governed the interpretation and performance of the contract. Affordable Care demanded arbitration.  An arbitrator from North Carolina was chosen. Unsurprisingly, the Defendants—who are from Mississippi—associated a Raleigh attorney as local counsel. Upon the local counsel's entry of appearance, the arbitrator disclosed that he "probably" has "had one or more cases [either] with [Defendants' local counsel] or against him during my career, but nothing in the last 10 years." He further clarified "I do not believe I have seen or communicated with [Defendants' local counsel] in over 10 years." Affordable Care does not dispute the truthfulness of these statements. Instead, Affordable Care complains that the arbitrator and Defendants' local counsel had other mutual connections within the North Carolina

legal community and at Duke University, and these mutual connections are sufficient to set aside the award. The law does not support Affordable Care's position.

The Court denies Affordable Care's Motion to Vacate and Motion for Discovery. The Court grants the Defendants' Motion to Confirm. The Court finds there is no evidence of fraud or evident partiality by the arbitrator. Nor did the arbitrator engage in misconduct or exceed his powers. Finally, Defendants' Motion for Sanctions is denied. While Affordable Care's claims are weak, Defendants have not demonstrated Affordable Care's Motion was frivolous or filed for the purpose of delay.

## I.   **BACKGROUND**

Affordable Care, LLC, a dental practice management company, entered into a twenty-year management services contract with Raeline K. McIntyre, DMD, P.C., on November 1, 2002.[1] On July 24, 2013, JNM Office Property—a company owned by Dr. Raeline McIntyre and her husband, Dr. Neil McIntyre—entered into a lease agreement with Affordable Care to lease property JNM had recently purchased in Gulfport, Mississippi.

In September, 2019, the Defendants notified Affordable Care of their desire to terminate the management services contract. On November 1, 2019, Affordable Care filed its initial demand for arbitration against the Defendants, in accordance with the mandatory arbitration provision in the management services agreement. On that same date, Affordable Care filed a federal civil suit (1:19-cv-827-HSO-RPM) against JNM Office Property, LLC, seeking a declaratory judgment that Affordable Care was not in default on the lease of the Gulfport property.

---

[1] Defendant Raeline K. McIntyre, DMD, is the sole owner of Raeline K. McIntyre, DMD, P.C.  Raeline K. McIntyre, DMD and Raeline K. McIntyre, DMD, P.C. will collectively be referred to as the "Defendants."

On June 3, 2020, Affordable Care filed an Amended Demand for Arbitration, bringing seventeen grounds for relief, including declaratory relief under the management services contract, attorneys' fees and indemnification, and multiple breach of contract claims. Later that month, the arbitrator who was originally selected by the parties withdrew from the matter due to Covid-19 concerns. The parties selected Charles Holton, using the AAA process, as the new arbitrator.

The Arbitration merits hearing was held over the course of five days in December, 2020. Closing arguments were made by the parties on February 11, 2021. On March 4, 2021, Affordable Care was granted leave by Arbitrator Holton to present additional arguments on the summary judgment decision entered in the lawsuit pending between Affordable Care and JNM Office Property. Finally, on March 22, 2021, the parties were notified that Arbitrator Holton had rendered his decision on March 19, 2021.

In his 115 page decision, Arbitrator Holton found in favor of the Defendants on all seventeen counts, and then awarded attorneys' fees in the amount of $379,168 and expenses in the amount of $14,430.75 to the Defendants. [16-38] at 115.

On March 24, 2021, Affordable Care filed a Complaint with this Court, seeking vacatur of the arbitration award and requesting remand of the matter to the AAA for a hearing on damages. Defendants moved [13] to dismiss the Complaint, asserting that the proper way to argue vacatur is by filing a motion to vacate as opposed to a complaint. [14] at 7. Affordable Care filed a Motion [16] to Vacate on June 17, 2021, arguing that vacatur is proper on all four grounds under 9 U.S.C. § 10. Additionally, Affordable Care filed a Motion [17] for Discovery, seeking discovery on Arbitrator Holton and his relationship with Defendants' local North Carolina attorney, Paul Sun. On June 18,

2021, the Defendants filed a Motion [20] to Confirm the Arbitration Award. Finally, on August 2, 2021, Defendants filed a Motion [33] for Sanctions.

Affordable Care argues for vacatur on the grounds that the arbitrator, Charles Holton, had an undisclosed relationship with the Defendants' counsel, Paul Sun and the Winters Law Firm. Affordable Care contends that because of that relationship, Arbitrator Holton was partial to the Defendants throughout the proceedings resulting in an "egregious award."

Based on its search of publicly available information, Affordable Care submits documents printed off of websites to show that Arbitrator Holton is a full time law professor at Duke University School of Law and serves as the Director of Duke Law School's Civil Justice Clinic, which partners with the Legal Aid of North Carolina. [16-43]. The Winters Firm, of which Paul Sun is a founding partner, provides *pro bono* services to the Legal Aid of North Carolina. [16-41] and [16-42]. Before joining Duke Law, Arbitrator Holton practiced in the private sector and represented Duke University in "many lawsuits from 1983 through 2005." *Id*. The Winters Firm allegedly took over representation of Duke University, and Paul Sun has represented Duke University in several cases since then.[2] Finally, Paul Sun taught a "Wintersession 2021" class at Duke Law School which occurred during the arbitration proceedings. [16-44].

There is no suggestion that there is a financial arrangement between Arbitrator Holton and Paul Sun. However, Affordable Care argues that because the Winters Law Firm and Paul Sun have previously represented Duke University and some faculty members in litigation, then there is an

---

[2] Affordable Care does not produce documents to support the statement that Arbitrator Holton represented Duke University from 1983 through 2005 or that the Winters Law Firm took over representation of Duke University, except for a newspaper article indicating that Paul Sun represented a Duke University employee in 2018. [16-45]. Affordable Care also does not allege that the Winters Law Firm is the only firm representing Duke University, as opposed to numerous firms representing a university as large as Duke.

attorney-client relationship between Arbitrator Holton and Paul Sun, since Arbitrator Holton is a faculty member at Duke Law School.

In response to Affordable Care's motion to vacate the arbitration award, the Defendants point to the following disclosure made by Arbitrator Holton:

> I would disclose that I know Mr. Sun [an attorney with Ellis & Winters] and probably have had one or more cases with him or against him during my career, but nothing in the last 10 years. I do not believe I have seen or communicated with him in over 10 years. His involvement would not affect my judgment in this case.

[28-1] at 1. This disclosure was made July 23, 2020, the day after Paul Sun and his firm were retained by the Defendants, and was forwarded to all counsel of record, along with the case manager's request that any objections to this disclosure be made by July 30, 2020. *Id.* Affordable Care did not raise any objections or concerns with regard to this disclosure. [29] at 11. And Affordable Care has not alleged that Arbitrator Holton was untruthful in making this disclosure. Nor has Affordable Care offered any evidence to contradict this disclosure.

The Defendants contend that they are entitled to enforce the arbitral award and request an entry of a judgment. Defendants contend that Affordable Care's assertions are nothing more than "rank speculation, conjecture, and conclusory allegations" made in an effort to have the Court vacate the award. [29] at 8.

## II.    <u>LEGAL STANDARD</u>

Under the Federal Arbitration Act, federal courts are limited to a narrow review of arbitration awards. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (holding that §§ 10 and 11 of the Federal Arbitration Act provide the exclusive grounds for expedited vacatur and modification); *Hamstein Cumberland Music Grp. v. Williams*, 532 F. App'x 538, 542 (5th Cir. 2013). "In light of the strong federal policy favoring

arbitration, judicial review of an arbitration award is extraordinarily narrow" and "exceedingly deferential." *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 543-44 (5th Cir. 2016) (citing *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471-72 (5th Cir. 2012)). Courts may vacate an arbitration award "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). In accordance with the Supreme Court's decision in *Hall Street*, the four grounds listed in Section 10 of the FAA are the exclusive means by which a party can vacate an arbitration award. *Citigroup Global Mkts., Inc. v. Bacon*, 562 F. 3d 349, 352 (5th Cir. 2009).

According to Section 10 of the FAA, an award can be vacated:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudice; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* (citing 9 U.S.C. § 10). "The Court does not 'conduct a review of an arbitrator's decision on the merits,' therefore 'arguments concerning the merits are irrelevant' to the Court's 'determination of whether there are statutory grounds within Section 10(a) under which the arbitration award should be vacated.'" *Vantage Deepwater Co. v. Petrobras Am. Inc.*, 4:18-cv-02246, 2019 WL 2161037, at *2 (S.D. Tex. May 17, 2019) (quoting *Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009)). An arbitration award "may not be set aside for a mere mistake of

fact or law." *WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d at 546 (quoting *Rain CII Carbon, L.L.C.*, 674 F.3d at 471-72). The party moving to vacate an arbitration award has the burden of proof, and any doubts or uncertainties must be resolved in favor of upholding the award. *WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d at 544 (citing *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385 & n.9 (5th Cir. 2004)).

In seeking vacatur, Affordable Care raises all four statutory grounds available in 9 U.S.C. § 10(a). [18] at 16-26. Defendants move to confirm the award, disputing Affordable Care's grounds for vacatur.[3] [21] at 5-7; [29] at 5-11. Additionally, Affordable Care requests that it be allowed to conduct limited discovery of the Arbitrator. [17]. Finally, Defendants seek sanctions in the form of attorneys' fees and costs associated with defending this action. [33]. The Court will first address each of Affordable Care's proposed grounds for vacatur and then consider the requests for discovery and sanctions.

### A. Fraud

Affordable Care first contends that the arbitral award must be vacated because Arbitrator Holton had a conflict of interest arising from his past and current dealings with Defense counsel Paul Sun and his law firm, and that the failure to disclose these past dealings resulted in an award procured by fraud.

The FAA provides that a district court can refuse to enforce an arbitral award when it has been "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). Under Section 10(a)(1), "a party who alleges that an arbitration award was procured by fraud must demonstrate:

---

[3] Defendants also filed a Motion [13] to Dismiss Plaintiff's Complaint [1], asserting that the filing of a Complaint was procedurally improper. Given the Court's ultimate decision in this matter, the Motion to Dismiss is denied as moot.

7

(1) that the fraud occurred by clear and convincing evidence; (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) the fraud materially related to an issue in the arbitration." *Morgan Keegan & Co., Inc. v. Garrett*, 495 F. App'x 443, 447 (5th Cir. 2012) (quoting *Barahona v. Dillard's, Inc.*, 376 F. App'x 395, 397 (5th Cir. 2010)); *see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004). With regard to the third prong, "[i]t is not necessary to establish that the result of the arbitration would have been different if the fraud had not occurred." *Karaha Bodas*, 364 F.3d at 306-07. However, Section 10(a)(1) does require "a nexus between the alleged fraud and the basis for the panel's decision." *Morgan Keegan & Co.*, 495 F. App'x at 447 (quoting *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990)).

Under the FAA, Affordable Care must meet its burden of proof on each of the three prongs. *See Barahona*, 376 F. App'x at 398, n.2 (declining to reach two of the prongs because failure to satisfy even one of them was dispositive). Affordable Care makes a blanket statement that the "undisclosed bias of an arbitrator" can meet the required showing. [18] at 16. Other than the conclusory statement that the "undisclosed bias of an arbitrator is an enumerated action that will satisfy this [fraud] requirement," Affordable Care provides no support with the facts or case law to demonstrate that any of the actions of the arbitrator rise to the level of "clear and convincing evidence" of fraud. Nor does Affordable Care even make a single argument under Section 10(a)(1) to explain how any one of the three prongs are met.

Arbitrator Holton disclosed that he "had one or more cases with [Paul Sun] or against him during [his] career, but nothing in the last 10 years." [28-1] at 1. He also disclosed that "I do not believe I have seen or communicated with him in over 10 years." *Id.* All that Affordable Care has

demonstrated is that Paul Sun and his law firm have provided legal representation for Duke University and some of its employees in the past. And Arbitrator Holton—as a full-time professor at Duke Law School and the Director of Duke Law School's Civil Justice Clinic—does some work with Legal Aid of North Carolina. Paul Sun's firm lists the Legal Aid of North Carolina as one of the seven entities for which it provides *pro bono* services. Finally, Affordable Care demonstrated that Paul Sun was listed as a professor for a "2021 Wintersession" class at Duke Law School. Notably, Arbitrator Holton was not listed as a "2021 Wintersession" instructor.

There is no evidence, nor has there been any allegation of such by Affordable Care, that Arbitrator Holton had any kind of financial dealings or close, personal relationships with Paul Sun or the Winters Law Firm. And the relationships described—such as the fact that both the Winters Law Firm and Arbitrator Holton do work for the Legal Aid of North Carolina—are the kind of professional relationships and contacts one would expect of people working in the same locality in the legal field. *See Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 946-47 (N.D. Ill. 2010) (noting that interactions between the arbitrator and one party's law firm such as lecturing at seminars and serving as past-presidents of the same legal organization reveal nothing beyond the kind of professional interactions one would expect of successful lawyers in a specialized field). And there is no evidence of any interaction between Paul Sun and Arbitrator Holton and any work with the Legal Aid of North Carolina. In fact, Arbitrator Holton disclosed that he did not think he had seen or spoken with Paul Sun in over ten years.  And all of these "connections" could have been discovered through "due diligence during the arbitration hearing," after Arbitrator Holton made the disclosure describing his prior knowledge of Paul Sun. *Morgan Keegan & Co.,* 495 F. App'x at 447 (quoting *Barahona*, 376 F. App'x at 397); *see also Uhl v.*

*Komatsu Forklift Co.,* 466 F. Supp. 2d 899, 907 (E.D. Mich. 2006) (finding no evidence of fraud where defendants knew of a relationship between the arbitrator and opposing counsel and with the exercise of due diligence could have uncovered the relationships of which they now complain). Finally, Affordable Care provides no basis, in fact or law, for its position that an attorney-client relationship exists between Arbitrator Holton and Paul Sun.

Affordable Care has not offered any arguments as to why even the first prong required to prove fraud has been met. As to the second prong, if Affordable Care had performed its due diligence, all of these connections were discoverable in the public domain during the arbitration. *See Morgan Keegan & Co.,* 495 F. App'x at 447 (holding the plaintiff could not meet its "burden of proof" under the second prong because the grounds for fraud were discoverable by due diligence before or during the arbitration); *Matter of Arb. Between Trans Chem. Ltd. and China Nat'l Machinery Import and Export Corp.*, 978 F. Supp. 266, 305-06 (S.D. Tex. 1997) ("CNMC also fails to meet . . . the three-part test for showing fraud or undue means . . . because it has not shown that TCL's allegedly improper behavior was not discoverable by due diligence before or during the arbitration hearing."). Even if the evidence supported a finding of fraud, which it does not, this prong is unsatisfied and Affordable Care's motion to vacate on this ground is denied.

## B. Evident Partiality

The Court next considers Affordable Care's contention that the award must be vacated under § 10(a)(2) based on the evident partiality of Arbitrator Holton. Under the FAA, courts may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 352 (5th Cir. 2009) (quoting 9 U.S.C. § 10(a)(2)). "[A]n arbitrator's nondisclosure must involve a 'reasonable impression of bias'

stemming from 'a significant compromising connection to the parties' in order for vacatur to be warranted under § 10(a)(2)." *OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 453 (5th Cir. 2020) (quoting *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 282-83 (5th Cir. 2007) (en banc)). However, the standard for assessing evident partiality is not the mere appearance of bias. *See Positive Software Sols., Inc.*, 476 F.3d at 285 ("[T]he 'mere appearance' standard would make it easier for a losing party to challenge an arbitration award for nondisclosure than for actual bias . . ." and "hold arbitrators to a higher ethical standard than federal Article III judges").

"Evident partiality is a 'stern standard.'" *WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d at 545 (quoting *Positive Software Sols., Inc.*, 476 F.3d at 281). "The statutory language . . . seems to require upholding arbitral awards unless bias was clearly evident in the decisionmakers." *Id.* Thus, for the arbitration award to be vacated, Affordable Care "must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to" the Defendants. *See Householder Grp. v. Caughran*, 354 F. App'x 848, 852 (5th Cir. 2009) (citation and internal quotation marks omitted). This is an "onerous burden," because the urging party must demonstrate that the "alleged partiality was direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Householder Grp.*, 354 F. App'x at 852 (quoting *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 550 (N.D. Tex. 2006)) (citation and internal quotations omitted).

### 1. Relationship with Counsel

When challenging an arbitration award based upon nondisclosure of an arbitrator's relationship with the parties, it must be shown that the arbitrator had a "significant compromising

connection to the parties." *Ameser. v. Nordstrom, Inc.,* 442 F. App'x 967, 970 (5th Cir. 2011). In nondisclosure cases, an award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding. *Positive Software Sols., Inc.*, 476 F. 3d at 283. The "reasonable impression of bias" standard is interpreted practically rather than with the utmost rigor. *Id.*

The question before the Court is whether Affordable Care has sustained its burden to establish "specific facts from which a reasonable person would *have* to conclude that the arbitrator was partial to its opponent." *OOGC Am., L.L.C.*, 975 F.3d at 453 (citations omitted) (emphasis in original). The Court concludes that it has not.

Affordable Care's claim that there was "evident partiality" fails for two reasons. First, Affordable Care waived the objection because it waited until after the arbitration award was issued to raise its claim of evident partiality. *See Dealer Computer Servs., Inc. v. Michael Motor Co.,* 485 F. App'x 724, 727 (5th Cir. 2012) ("A party seeking to vacate an arbitration based on an arbitrator's evident partiality generally must object during the arbitration proceedings. Its failure to do so results in wavier of its right to object."). And what Affordable Care has shown are a few professional connections, the existence of which were readily discoverable to anyone who chose to look. *See Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004) (holding that a party waives later challenges if it "either knew or should have known of the facts indicating partiality"); *Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691 (2d Cir. 1978) (refusing to vacate the award where one party alleged a "close personal and professional relationship" between the arbitrator and the president of firm that owned the vessel involved in the arbitration where basis of relationship was that the arbitrator and the executive had served together on 19 arbitration

panels and no other concrete support was given for the characterization that the two were "close personal friends"). All the "connections" described by Affordable Care were fairly discoverable. By waiting until the completion of the arbitration proceedings—and after it received an unfavorable ruling—Affordable Care waived its "objection" of evident partiality.

Second, it is clear that neither the facts nor the law support a finding of evident partiality on the part of Arbitrator Holton. Significantly, Affordable Care has not cited a single case that would support the conclusions it draws from the professional connections of Arbitrator Holton, Paul Sun, and the Winters Law Firm. Nor does Affordable Care offer any specific facts to contradict Arbitrator Holton's disclosure that he has not seen or had any communications with Paul Sun in over ten years. The most Affordable Care does is put forward conclusory assertions of partiality towards the Defendants.

The cases that Affordable Care relies upon to argue vacatur under Section 10(a)(2) involve business and financial relationships between the arbitrator and one of the parties. For example, in *Thomas Kinkade Co. v. White*, 711 F.3d 719, 724 (6th Cir. 2013), the arbitration award was vacated because the neutral arbitrator's law firm had accepted a business engagement from one of the parties to the arbitration. And in *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994), the Ninth Circuit reversed the district court's judgment to vacate the award where one of the arbitrators failed to disclose that his law firm had represented the parent company of a party to the arbitration in 19 cases over 35 years.

Affordable Care is correct that "[c]ourts have found that a reasonable impression of partiality is established when the arbitrator has had a direct business or professional relationship with one of the parties to an arbitration." *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F.

Supp. 2d 545, 552 (N. D. Tex. 2006); *see also Thomas Kinkade Co. v. White*, 711 F.3d 719, 724 (6th Cir. 2013) ("[w]hen the neutral arbitrator engages in or attempts to engage in mid-arbitration business relationships with non-neutral participants, it jeopardizes what is supposed to be a party-structured dispute resolution process.").

However, there is no allegation or evidence of a financial or business relationship between Arbitrator Holton and Paul Sun or the Winters Law Firm. Also, the unsubstantiated, conclusory allegation that an attorney-client relationship exists between Arbitrator Holton and Paul Sun is not supported by the evidence. Affordable Care does not provide any relevant law to support its conclusion that by virtue of Paul Sun and the Winter Law Firm's representation of Duke University, and on occasion some of its faculty members, an attorney-client relationship exists between Paul Sun and Arbitrator Holton, a professor at Duke Law School.[4] While Affordable Care cites Rule 1.13 of the North Carolina Rules of Professional Conduct in support, it fails to cite the comment to that rule which states, "[t]his does not mean, . . . , that constituents of an organizational client are the clients of the lawyer." N.C. RULES OF PRO. CONDUCT R. 1.15 cmt. According to Arbitrator Holton's disclosure—which was not objected to by Affordable Care—he had not seen or communicated with Paul Sun in over ten years. And Affordable Care does not provide any legal support for its contention that because Arbitrator Holton previously did legal work for Duke University, and Paul Sun currently does legal work for Duke University, there is a conflict of interest. *See Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1149-50 (10th Cir. 1982)

---

[4] In support of its claim that an attorney-client relationship exists between Arbitrator Holton and Paul Sun, Affordable Care sites to Rule 1.13 of North Carolina Rules of Professional Conduct and an unpublished Connecticut district court case (*Metcalf v. Yale Univ.*, No. 15-cv-1696, (D. Conn. Dec. 27, 2017)—neither of which are persuasive authority for this Court as neither suggest that an attorney for an organization has an attorney-client relationship with every employee of the organization it represents. [18] at 20.

(affirming denial of vacatur where the arbitrator and law firm representing a party had clients in common and finding that requiring vacatur under such facts would "request that potential neutral arbitrators sever all their ties with the business world"). Nor is there any authority to support Affordable Care's position that every attorney who has represented Duke University has an attorney-client relationship with each of the thousands of employees at Duke—including the faculty of Duke Law School and Duke Medical School. *See Liquor Bike, LLC v. Iowa Dist. Ct. for Polk Cnty.*, 959 N.W.2d 693, 697 (Iowa 2021) ("[A] lawyer's representation of an organization does not necessarily mean the lawyer also represents the owners, employees, or other constituents of the organization.").

And Courts have refused vacatur where the undisclosed connections are much stronger.[5] For example, in *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141 (4th Cir. 1993), the arbitrator failed to disclose his law partner's representation of one of the parties to the arbitration. *Id*. at 145. The partner had done the work while working for a different law firm and had not brought the client with him when he joined the arbitrator's firm. *Id*. The court found that the partner's prior representation of the party was not sufficient grounds for finding evident partiality by the arbitrator where the arbitrator was not involved in the litigation between the parties. *Id*. at 146.  And in *Lummus Global Amazonas, S.A. v. Aguaytia Energy del Peru*, 256 F. Supp.

---

[5] *See ANR Coal Co, Inc. v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493 (4th Cir. 1999) (finding vacatur improper where arbitrator's law firm represented company that indirectly caused the dispute in the arbitration by buying less from the defendant, who in turn sought to buy less from the plaintiff); *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C. Cir. 1996) (denying vacatur where arbitrator's former law firm represented party to the arbitration on unrelated matters); *Lifecare Int'l, Inc. v. CD Med. Inc.*, 68 F.3d 429, 432-34 & n.3 (11th Cir. 1995) (affirming denial of vacatur where arbitrator failed to disclose that he became "of counsel" to a law firm the prevailing party had interviewed for the purpose of obtaining representation in the instant dispute and finding that this, at best, showed a remote, uncertain, and speculative partiality); *Health Services Mgm't Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992) (finding relationship "minimal" and insufficient to vacate where arbitrator knew one of the parties, had worked in the same office with him twenty years ago, and saw him once a year since that time).

2d 594 (S.D. Tex. 2002), the arbitrator disclosed that his law firm and a former law partner (Carolyn Goode) had done work for a party to the arbitration and for a company (El Paso Energy) that owned a minority interest in that party. *Lummus Global*, 256 F. Supp. 2d at 620. After the arbitrator issued his ruling, Lummus discovered "new evidence" of the relationship between the arbitrator's law firm and El Paso Energy. *Id.* at 621. Another former law partner of the arbitrator (John Hushon) left the law firm to become President of El Paso Energy. *Id.* John Hushon retained his former law firm and Carolyn Goode who did substantial legal work on a financing project involving Aguaytia Energy. *Id.* The court found that the arbitrator's alleged nondisclosure did not require vacatur, noting that the disclosure put Lummus "'on notice' of the circumstances they now allege are potentially disqualifying." *Id.* at 626.

Unlike the arbitrators in *Peoples* and *Lummus*—whose law partners actually did legal work for a party to the arbitration—there is no allegation or evidence that Arbitrator Holton or his law firm had ever done legal work for the Defendants. Arbitrator Holton and Paul Sun, as Arbitrator Holton disclosed to the parties, had cases together in the past. And while the arbitrator in *Peoples* did not make any disclosure about the work his law partner had done for a party to the arbitration, Arbitrator Holton disclosed that he knew Paul Sun from previously having cases with or against him. Affordable Care did not object to this disclosure which put it "on notice." *See Lummus Global*, 256 F. Supp. 2d at 626. And while both Arbitrator Holton and Paul Sun represented Duke University at different times, case law supports this Court's finding that denial of vacatur is appropriate because this is the kind of "trivial former business" relationship, that does not require disclosure. *See Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278 (5th Cir. 2007) (en banc) (holding that vacatur was not warranted where arbitrator and counsel for a

party to the arbitration worked on the same litigation for six years but had not spoken to each other prior to the arbitration and describing this relationship as a "trivial former business relationship"); *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294 (6th Cir. 2008) (affirming denial of vacatur where arbitrator did not disclose that he had served as co-counsel with counsel for one party on two occasions six years earlier); *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1360 (6th Cir. 1989) (declining to vacate where arbitrator adjudicated a case involving former law partners—whose practice he had left two-and-a-half years earlier—since there was an absence of evidence of a personal interest in the arbitration or prior knowledge of the substance of the arbitration).

Finally, Affordable Care points to the fact that Paul Sun taught a "Wintersession 2021" class at Duke Law where Arbitrator Holton is a full-time law professor. First, the Court notes that while Paul Sun is listed as an instructor for "Wintersession 2021," Arbitrator Holton is not included in that list. As Affordable Care points out in its brief, this class was taught "during the weekends of Friday, February 19 – Sunday, February 21, and Friday, March 12 – Sunday, March 14." [39] at 7. Affordable Care offers no arguments or case law to support its conclusory claim of evident partiality based on the fact that Paul Sun taught a class as an adjunct professor at the same university that employed Arbitrator Holton. In *Midwest Generation EME, LLC v. Continuum Chemical Corp.*, 768 F. Supp. 2d 939 (N.D. Ill. 2010), Continuum's "evidence" of arbitrator bias included contacts between the arbitrator and counsel for the prevailing party. *Id.* at 949. These contacts included: (1) presenting together at seminars for the College of Commercial Arbitrators, (2) co-authoring various law journal articles, (3) serving as past-presidents (at different times) of a professional organization, (4) holding membership in the ABA Real Estate Advisory Board, and (5) developing continuing education programs. *Id.* at 949. The court noted that "these particulars

reveal nothing beyond the kind of professional interactions that one would expect of successful lawyers in the area where [the arbitrator] and [plaintiff's counsel] functioned." *Id.*

As the Sixth Circuit cautioned in *Uhl*:

> We will not rush to conclude that an arbitrator is evidently partial. Arbitrators are often chosen for their expertise and community involvement, so '[t]o disqualify any arbitrator who had professional dealings with one of the parties (to say nothing of a social acquaintanceship) would make it impossible, in some circumstances, to find a qualified arbitrator at all.'

*Uhl*, 512 F.3d at 308 (internal citations omitted). *See also Positive Software Sols., Inc.*, 476 F.3d at 286 ("Neither the FAA nor the Supreme Court, nor predominant case law, nor sound policy countenances vacatur of FAA arbitral awards for nondisclosure by an arbitrator unless it creates a concrete, not speculative impression of bias."); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 678 (7th Cir. 1983) ("Notwithstanding the broad language of Section 18 [of the AAA's Commercial Arbitration Rules], no one supposes that either the Commercial Arbitration Rules or the Code of Ethics for Arbitrators requires disclosure of every former social or financial relationship with a party or a party's principals.").

Accordingly, Affordable Care has not met its burden of showing a significant compromising connection exists between Arbitrator Holton and Paul Sun that would merit vacatur. *Amser v. Nordstrom, Inc.*, 442 F. Appx 967, 970 (5th Cir. 2011) (an arbitrator's nondisclosure of prior service in an earlier arbitration involving one of the parties did not meet the "high threshold" necessary for vacating an award based on evident partiality). "The draconian remedy of vacatur is only warranted upon nondisclosure that involves a significant compromising relationship." *Positive Software Sols., Inc.*, 476 F.3d at 286. This case does not come close to meeting that standard when

Affordable Care has not disputed that Arbitrator Holton and Paul Sun have not seen each other or communicated in over ten years. Affordable Care's motion for vacatur on this ground is denied.

### 2.  Arbitrator Holton's Actions During the Arbitration Proceedings

Affordable Care further seeks vacatur of the award under Section 10(a)(2) on the ground that Arbitrator Holton displayed evident partiality and bias by granting the Defendants certain procedural advantages.

First, Affordable Care asserts that the Defendants were given an advantage by Arbitrator Holton granting a continuance of the Arbitration hearing, seven weeks before the hearing was scheduled to take place. As Affordable Care points out in its brief, Paul Sun "had been in an accident on July 31, 2020 and was recovering from his injuries." [18] at 10. Affordable Care does not cite any case law to support its assertion that Arbitrator Holton's grant of a continuance to a party whose attorney was injured in an accident is evidence of a procedural advantage. Nor does Affordable Care assert or offer evidence that Paul Sun was not actually injured in an accident. There is no merit to the argument that the Arbitrator Holton was giving the Defendants an advantage when a continuance was granted because Paul Sun was recovering from physical injuries sustained in an accident. Furthermore, Arbitrator Holton allowed Affordable Care additional time to present evidence and provide arguments after the final arbitration hearing and closing arguments had been made. [16-38] at 2-3. Affordable Care appears to argue that Arbitrator Holton's grant of a continuance based on physical injuries sustained by the Defendants' attorney was more of "a procedural advantage" than allowing Affordable Care to make arguments and submit evidence after the final arbitration hearing. Affordable Care is wrong.

Next, Affordable Care argues that Arbitrator Holton gave the Defendants an advantage by allowing Defendants to take a different position during the arbitration than they took on a similar issue that was raised in a separate federal civil action related to a separate contract. To clarify, the Court notes that the parties to the civil action (1:19-cv-827-HSO-RPM) referred to by Affordable Care are Affordable Care and JNM Office Property, LLC. JNM Office Property is owned by Raeline McIntyre and her husband, Neil McIntyre. In that action, Affordable Care sought a declaratory judgment that it was not in default of a lease agreement that the parties entered into in 2013. The parties to the instant action are Affordable Care, Raeline K. McIntyre, DMD, and Raeline K. McIntyre, DMD, P.C., and the subject of this action is the management services contract entered by the parties in 2002. Affordable Care offers no legal support for its position that Arbitrator Holton was bound by the decision of a federal district court in a different state in a different matter involving different contracts or that failure to follow that district court ruling constitutes bias or misconduct justifying vacatur of the arbitration award. Significantly, pursuant to the arbitration agreement, the interpretation and performance of the contract were governed by North Carolina law.

In *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgm't, L.P.*, 828 F.3d 362 (5th Cir. 2016), the Fifth Circuit considered a claim of arbitrator bias where the arbitrator and the district court reached *the same* conclusion on cases with similar issues and the same parties. *Id.* at 364-65. The court stated that "the fact that the arbitrator and the district court reached the same result regarding the meritlessness of the Investors' claim is not itself evidence of improper bias," noting that the arbitrator's award did not reference the district court's summary judgment and nothing in the award suggested that it as not the product of an independent evaluation by the arbitrator. *Id.*

Affordable Care has not shown that Arbitrator Holton gave the Defendants such an advantage to justify vacatur when deciding what weight to give a ruling in an action in a different state that involved different contracts. Therefore, vacatur is not appropriate on this ground under Section 10(a)(2).

### C. Arbitrator's Misconduct

Affordable Care argues that vacatur is merited under Section 10(a)(3) because Arbitrator Holton engaged in "misconduct" when he "refused to consider evidence of the arguments and summary judgment on the issue of waiver." [18] at 22. The Defendants assert that this "summary judgment evidence" is from a separate civil action involving a lease between parties who were not subject to this arbitration. [29] at 1-2. The arbitrator accepted into the hearing record the summary judgment ruling from that civil lawsuit between Affordable Care and JNM Office Property, LLC, 1:19-cv-827-HSO-JCG, and allowed oral argument on the matter. [1-2] at 2-3.

Each of the parties to an arbitration must be given an "adequate opportunity to present its evidence and arguments." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 300 (5th Cir. 2004) (citations omitted). However, "an arbitrator is not bound to hear all of the evidence tendered by the parties." *Id.* "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." *Id.* at 301. "A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings" such that "the exclusion of relevant evidence deprives a party of a fair hearing." *Id.*

Affordable Care alleges that Arbitrator Holton did not consider the summary judgment ruling from a separate civil action involving a lease agreement between Affordable Care and JNM

Property, LLC—an entity that was not a party to the instant arbitration. However, Affordable Care's statement that the arbitrator did not "consider" the summary judgment ruling from Civil Action No. 1:19-cv-827-HSO-JCG does not line up with the record. In fact, oral arguments were allowed on the matter—*after* closing arguments were made—and the summary judgment ruling was received into the record. [16-38] at 2-3. Clearly, Arbitrator Holton did not refuse to hear or exclude this evidence. And as the Court just stated, Affordable Care cites to no authority that suggests that the arbitrator was bound by a district court ruling in a separate action in another state, involving different contracts, or that failure to follow that ruling constitutes bias or misconduct justifying vacatur of the arbitration award. Whether or not Arbitrator Holton decided to give weight to a particular piece of admitted evidence has no bearing on the issue of whether misconduct occurred meriting vacatur. *See Vantage Deepwater Co. v. Petrobras Am. Inc.*, 4:18-CV-02246, 2019 WL 2161037, at *8 (S.D. Tex. May 17, 2019).

On these facts, Affordable Care has not shown that Arbitrator Holton denied it an adequate opportunity to present its evidence and arguments. Accordingly, the Court finds that Affordable Care did not carry its burden of demonstrating that it was deprived of a fair hearing. Therefore, vacatur is not appropriate under Section 10(a)(3).

### D.  Arbitrator Exceeding His Powers

Finally, Affordable Care argues that the final award, which included attorney's fees and costs, requires vacatur under Section 10(a)(4).  [18] at 23. The Defendants note that the arbitration hearing lasted six days, including additional time granted to Affordable Care to provide more evidence and to make additional arguments. [29] at 4. Defendants further argue that Arbitrator

Holton's 115 page opinion was supported by the record and that vacatur of this matter is not warranted. *Id.* at 5-6.

Section 10(a)(4) authorizes a federal court to set aside an arbitration award "where the arbitrators exceeded their powers." *BNSF R. Co. v. Alstom Transp. Inc.*, 777 F.3d 785, 788 (5th Cir. 2015). "An argument for vacatur under Section 10(a)(4) must be balanced against the parties' agreement to have the arbitrators interpret their agreement, which means that 'an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's views of its (de)merits.'" *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 375 (5th Cir. 2020) (quoting *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013)). "A party seeking relief under that provision bears a heavy burden." *Oxford Health Plans, LLC,* 569 U.S. at 569. "It is not enough . . . to show that the [arbitrator] committed an error – or even a serious error." *Id.* (quoting *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)). Under Section 10(a)(4), the Court looks at "whether the arbitrator's award was so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract] as to manifest an infidelity to the obligation of an arbitrator." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802-03 (5th Cir. 2013). "The substantive question of whether an arbitrator has exceeded its powers is a function of [a] highly deferential standard of review in such cases: an arbitrator has not exceeded his powers unless he has utterly contorted . . . the essence of the contract." *Vantage Deepwater Co.*, 966 F.3d at 375 (quoting *Timegate Studios, Inc.*, 713 F.3d at 802-03). "In other words, the arbitrator exceeds his authority where he acts 'contrary to an express contractual provision.'" *Id.* (quoting *PoolRe Ins. Corp. v. Org. Strategies, Inc.*, 783 F.3d 256, 265 (5th Cir. 2015)). The Court "resolve[s] any doubts in favor of

arbitration." *Id.* (citing *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012)).

Affordable Care argues that Arbitrator Holton exceeded his powers by granting an award of attorneys' fees and costs, "which were never claimed by Defendants." [18] at 23. Contrary to Affordable Care's assertion that Defendants did not request costs and attorneys' fees, Defendants clearly sought such an award in their Answer to Affordable Care's Amended Demand for Arbitration. *See* [16-29] at 34 (Respondents "pray that the Amended Demand for Arbitration be dismissed with prejudice, taxing all costs of this action to Claimant and awarding Respondents reasonable attorneys' fees against Affordable, and that a judgment be entered in the Respondents' favor, together with costs incurred herein").

Further, the Final Award set forth the basis for award, and that is all that is necessary. *See Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 640 (2d Cir. 2016) ("A reasoned award sets forth the basic reasoning of the arbitral panel on the central issue or issues raised before it. It need not delve into every argument made by the parties."). After analyzing each of Affordable Care's seventeen causes of action, Arbitrator Holton addressed "attorneys' fees and expenses." [16-38] at 110-114. At the outset, the Final Award states:

> AAA Commercial Rule 47(d)ii authorizes an award of attorneys' fees 'if all parties have requested such an award or it is authorized by law or in their arbitration agreement.' Both parties seek attorneys' fees in this matter. Rule 47 also provides that the arbitrator 'shall assess' fees and expenses.

*Id.* at 110.[6] Arbitrator Holton outlined the factors considered in determining what attorneys' fees and expenses to assess and the basis for the ultimate award. *Id.* at 110-115. It is clear that Arbitrator

---

[6] The Service Contract at issue expressly incorporates the rules of the AAA. *See* [21-1] at 9 ("Any controversy or dispute . . . will be settled by arbitration in Raleigh, North Carolina in accordance with the then existing rules of the American Arbitration Association applicable to commercial arbitration.").

Holton concluded that the parties both requested attorneys' fees and expenses, and that he was required by Rule 47 to award them.

Affordable Care has not met its burden to show that "the arbitrator's award was so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract] as to manifest an infidelity to the obligation of an arbitrator." *See Timegate Studios*, 713 F.3d at 802; *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990) ("Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations . . . Submission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial"). Arbitrator Holton did not exceed his powers by issuing an award of attorneys' fees and costs to the Defendants.

Accordingly, the Court finds that vacatur under Section 10(a)(4) is not appropriate.

### III.   MOTION FOR DISCOVERY

Affordable Care additionally requests a period of "limited discovery related to the Arbitrators' bias, partiality, and conflicts of interest, specifically related to Arbitrator Holton's relationship with Paul Sun and the Winters Firm." [17-2] at 8. The Defendants contend that post-arbitration discovery, including deposing Arbitrator Holton is improper. The Defendants also argue that Arbitrator Holton's disclosure with regard to his connection to Paul Sun was not objected to by the Plaintiffs, and Affordable Care's late request for discovery on the arbitrator is an attempt to "freeze the confirmation proceedings." [25] at 3.

"District courts occasionally allow discovery in vacatur and confirmation proceedings." *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 372 (5th Cir. 2020) (citing FED. R. CIV.

P. 81(a)(6)(B). The Fifth Circuit has endorsed "a flexible inquiry for district courts to use when assessing discovery requests in the context of such proceedings: 'the court must weigh the asserted need for hitherto undisclosed information and assess the impact of granting such discovery on the arbitral process.'" *Id.* (quoting *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bimi Negara*, 364 F.3d 274, 305 (5th Cir. 2004) (internal citations omitted)). The Court should focus on "specific issues raised by the party challenging the award and the degree to which those issues implicated factual questions that cannot be reliably resolved without some further disclosure." *Id.* "The party seeking discovery bears the burden of showing its necessity." *Id.* (quoting *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009)). "Moreover, '[t]he loser in arbitration cannot freeze the confirmation proceedings in their tracks and indefinitely postpone judgment by merely requesting discovery.'" *Id.* (quoting *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 337 (5th Cir. 1976)).

It has been observed that the deposition of arbitrators has been "repeatedly condemned" by courts. *Legion Ins. Co. v. Ins. General Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987). *See Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 68 (2nd Cir. 2003), *abrogated on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *Woods v. Saturn Dist. Corp.*, 78 F.3d 424, 430 (9th Cir. 1996); *O.R. Securities, Inc. v. Pro. Plan. Assocs., Inc.* 857 F.2d 742, 748 (11th Cir. 1988). *See also Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2nd Cir. 1991) (affirming district court's denial of Chrysler's request to depose the individual arbitrator where Chrysler did not present any clear evidence of impropriety and finding district court did not err in its finding that Chrysler was simply "engaging in a fishing expedition in an attempt to determine if there is some basis, however farfetched, to prosecute a claim of bias.").

In support of its request to conduct discovery, Affordable Care cites district court cases out of New Jersey and New York where courts held that discovery requests may be granted where the "discovery is plainly relevant to colorable claims of arbitral bias." *See Nat'l Hockey League Players' Ass'n v. Bettman*, No. 93-CIV-5769, 1994 WL 38130, at *2 (S.D. N.Y. Feb. 4, 1994); *Hamilton Park Health Care Ctr., LTD, v. 1199 SEIU United Healthcare Workers East*, Civ. Act. No. 13-0621 (DMC), 2013 WL 6050138, at *5 (D. N.J. Nov. 13, 2013); *Cable Sys. Installations Corp. v. Int'l Brotherhood of Electrical Workers, Local Union No. 351*, Civ. No. 12-7407-JHR-KMW, 2014 WL 12919266, at *3 (D. NJ. Jun. 6, 2014). As stated above, the standard in the Fifth Circuit for assessing "evident partiality" is not the "mere appearance of bias." *Positive Software Sols., Inc.*, 476 F.3d at 285. Rather, Affordable Care must establish that "a reasonable person would have to conclude that the arbitrator was partial" to the Defendants. *Householder Grp.*, 354 F. App'x at 852  (quoting *Weber*, 455 F. Supp. 2d at 550).

Not only do the cases cited by Affordable Care apply a different standard than that of the Fifth Circuit, but they are further distinguishable by their facts and holdings. For example, in both *Cable Sys. Installations* and *Nat'l Hockey League Players' Ass'n*, the courts found that the plaintiffs had set forth some basis for supporting the requests for discovery where there was evidence that the arbitrator had decided the outcome of the case prior to the hearing. *See Cable Sys. Installations*, 2014 WL 12919266, at *4; *Nat'l Hockey League Players' Ass'n*, 1994 WL 38130, at *4. Affordable Care has only presented mutual connections in the legal community between Arbitrator Holton and Paul Sun that were discoverable during the arbitration. And Affordable Care has offered no evidence to refute Arbitrator Holton's disclosure that he has not seen or communicated with Paul Sun in at least ten years. Nor has Affordable Care even suggested that Arbitrator Holton was being

dishonest in his disclosure. Certainly, no evidence has been offered to suggest that the matter was determined prior to the arbitration hearings. Finally, in *Hamilton Park Health Care Center, LTD.*, the court found that the plaintiff "failed to make a showing sufficient to justify an order compelling discovery." *Hamilton Park Health Care Ctr., LTD.*, 2013 WL 6050138, at *6.

Affordable Care has provided no evidence that a reasonable person would have to conclude that Arbitrator Holton was partial to the Defendants. *See Uhl v. Komatsu Forklift Co.,* 512 F.3d 294 (6th Cir. 2008) (denying discovery on arbitrator after denying vacatur on the basis of evident partiality where plaintiff failed to provide evidence that a reasonable person would have to conclude that the arbitrator was partial based on the fact that the arbitrator's former law partner was counsel in the arbitration). Both Arbitrator Holton's timely disclosure as well as the evidence provided by Affordable Care suggest that the relationship between Arbitrator Holton and Paul Sun was purely professional and more than ten years ago. *See Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691, 701-02 (2nd Cir. 1978) (affirming denial of discovery into relationship between arbitrator and principal where record showed extent of relationship was purely professional); *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2nd Cir. 1991) (affirming denial of discovery where party had failed to show that arbitrator had any financial or personal stake in the outcome); *Lummus Global Amazonas, S.A. v. Aguaytia Energy del Peru*, 256 F. Supp. 2d 594, 626-27 (S.D. Tex. 2002) (denying discovery for alleged bias of arbitrator based on arbitrator's former law partners' representation of owner and investor in owner where record was adequate to permit court to determine the issue); *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 946-47 (N.D. Ill. 2010) (holding that sufficient evidence that would justify subjecting the arbitrator to discovery was not presented where all that was shown was "a series of public, almost exclusively parallel contacts

involving lecturing and writing on construction related matters" and "these endeavors were 'no secret,'" and their existence . . . was readily available to anyone who chose to look").

Accordingly, Affordable Care's motion for discovery is denied.

### IV.   <u>MOTION FOR SANCTIONS</u>

Defendants have also asked the Court to sanction [33] Affordable Care for filing a motion to vacate "for the purpose of delay." [34] at 2. Affordable Care's Response includes emails between counsel and a seventeen page brief. Affordable Care requests reasonable expenses, including attorneys' fees, associated with responding to the motion, in accordance with Rule 11(c)(2) of the Federal Rules of Civil Procedure. [38] at 1.

Rule 11 authorizes a court to impose sanctions on a party who files a pleading if the claims or defenses of the signer are not supported by existing law or by a good faith argument for an extension or change in existing law, FED. R. CIV. P. 11 (b)(2); or the allegations and other factual statements lack evidentiary support or are unlikely to do so after a reasonable opportunity for investigation. FED. R. CIV. P. 11 (b)(3). The purpose of the rule is to "deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 404, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), and to ensure that "victims of frivolous lawsuits do not pay expensive legal fees associated with defending such lawsuits." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988). After notice and opportunity to respond, courts finding a Rule 11(b) violation may impose appropriate sanctions. FED. R. CIV. P. 11 (c)(1). These may include monetary and injunctive sanctions, *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986), and even dismissal, *see Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003). Courts

have a duty to impose the least severe sanction that is sufficient to deter future conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993); Fed. R. Civ. P. 11 (c)(4).

The Fifth Circuit has noted that "[a]n attorney may escape sanctions under [R]ule 11 if he had to rely on a client for information about the facts underlying the pleadings." *St. Amant v. Bernard*, 859 F.2d 379, 383, n.15 (5th Cir. 1988). In *St. Amant*, the court summarized the three duties that Rule 11 places on attorneys:

> (1) counsel must make reasonable inquiry into the factual basis of any pleading, motion, or other paper; (2) counsel must make a reasonable inquiry into the law; and (3) counsel must not file a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the cost of litigation.

*Id.* at 382 (citing *Thomas*, 836 F.2d at 874).

The Court is within its discretion to deny the Defendants' request for sanctions. *See Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 404, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) (stating that a district court has broad discretion in determining whether any sanction is warranted and, if so, what it should be); *Lulirama, Ltd. v. Axcess Broadcast Servs., Inc.*, 128 F.3d 872, 884 (5th Cir. 1997) (affirming district court's refusal to impose sanctions); *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997) (reversing district court's order imposing sanctions because plaintiff's libel claims were well grounded in fact and law).

Rule 11 requires the movant to "describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11 (c)(2). "Under Rule 11(b)(2), [s]anctions are appropriate if counsel submits a legally indefensible filing, and [a] filing is legally indefensible if it is not warranted by existing law or by a nonfrivolous argument." *M2 Techn., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 589 (5th Cir. 2018) (citing *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th

Cir. 2016)) (internal quotations omitted). Defendants assert that Affordable Care's motion to vacate is frivolous and that it should be sanctioned for its bad conduct. [34] at 3, 7.

However, Defendants have failed to meet their burden under Rule 11 of showing that these claims were frivolous. While Affordable Care's case is weak and the Court ultimately denied the motion to vacate, Defendants have not shown that the filings were "legally indefensible." *M2 Techn.*, 748 F. App'x at 589 (citing *Snow Ingredients, Inc.*, 833 F.3d at 528) (internal quotations omitted). *See Greenblatt v. Richard Potasky Jeweler, Inc.*, 19 F. App'x 307, 310 (6th Cir. 2001) (denying costs where the plaintiff's appeal "though weak, is not frivolous"); *Brandt v. Magnificent Quality Florals Corp.*, 371 F. App'x 994, 995 (11th Cir. 2010) (affirming denial of sanctions where "Plaintiffs' case [was] weak at best"); *We Shall Overcome Fdn. v. Richmond Org., Inc.*, 330 F. Supp. 3d 960, 968 (S.D. N.Y. 2018) (holding that while defense proffered was weak, it was not frivolous).

In support of its Motion to Vacate, Affordable Care filed a twenty-seven page brief citing cases in an effort to support its arguments. *See Auto Mech. Local 701 v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 579 (7th Cir. 1991) (cross motions for sanctions denied because arguments made were not "devoid of arguable merit"). While the Court finds that all of Affordable Care's bases for vacatur are unavailing, the Court cannot say that bringing forward these grounds was frivolous or done in bad faith. *See Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3rd Cir. 1988) (reversing monetary sanctions because while legal theory espoused was novel, it was not plainly unreasonable); *Allied Indus. Workers of Am. Local 232 v. Briggs & Stratton Corp.*, 837 F.2d 782, 788-89 (7th Cir. 1988) (affirming district court's denial of sanctions because Briggs & Stratton had not resisted arbitration in bad faith).

In its seventeen page memorandum in Response to Defendants' motion for sanctions, Affordable Care describes its efforts to comply with Rule 11's requirement to make reasonable inquiry into the facts supporting its claims. [39] at 10-14. Affordable Care outlines its discovery of connections of which it claimed showed "evident partiality" as well as its efforts to ascertain more about the contacts between Arbitrator Holton and Paul Sun. Affordable Care researched the issues and attempted to find some case law to support its position. And while this Court finds those cases distinguishable from this case and Affordable Care's position in moving to vacate is unpersuasive and quite weak, the Court does not find their arguments were so frivolous as to warrant Rule 11 sanctions. Similarly, there is a lack of evidence of "improper purpose, such as harassment or delay." *Uhl v. Komatsu Forklift Co.,* 512 F.3d 294, 308 (6th Cir. 2008) (denying sanctions where, although Komatsu's case was weak, there was no evidence of improper purpose or delay behind the appeal).

Accordingly, the Defendants' motion for sanctions is denied. The Court further denies Affordable Care's request for attorney's fees associated with the motion. *See* FED. R. CIV. P. 11(c)(2) ("If warranted, the court *may* award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion). Affordable Care's case is flimsy, and the Court declines to award sanctions to either side. *See Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999) (motions for sanctions by both parties denied because both parties contributed to "disharmony in the proceedings" and filed briefs that "were long on hyperbole and personal attacks").

## V.    <u>CONCLUSION</u>

IT IS, THEREFORE, ORDERED AND ADJUDGED that Plaintiff's [16] Motion to Vacate Arbitration Award is DENIED and Defendants' [20] Motion to Confirm Arbitration Award is GRANTED. The Defendants are entitled to recover attorneys' fees in the amount of $379,168 plus costs in the amount of $14,430.75 from the Plaintiff as provided in the Arbitration Award entered on March 19, 2021. The Court rules as follows with respect to the remaining motions:

1.  Plaintiff's [17] Motion for Discovery is DENIED;

2.  Defendants' [33] Motion for Sanctions is DENIED;

3.  Plaintiff's [12] Ex Parte Motion for Case Management Conference is DENIED AS MOOT;

4.  Defendants' [13] Motion to Dismiss is DENIED AS MOOT;

5.  Plaintiff's [26] Motion for Leave to File Substitute Exhibit 28 is GRANTED; and

6.  Plaintiff's [35] Motion for Leave to File Supplemental Memorandum and Motion to Conduct Limited Discovery is GRANTED in part and DENIED in part. The motion is GRANTED to the extent the Court allows the filing of the Motion and considered it in its rulings but DENIES the motion as to the relief requested.

**SO ORDERED AND ADJUDGED** this the 31st day of March, 2022.

_____

TAYLOR B. McNEEL

UNITED STATES DISTRICT JUDGE